BRADFORD v. BELKNAP MOTOR CO.

(Circuit Court of Appeals, First Circuit.   April 18, 1902.)

No. 389.

PATENTS—INFRINGEMENT—ELECTRICAL APPARATUS.
    The Bradford patent, No. 535,158, for a method of, and apparatus for, regulating electric circuits, construed, and *held* not infringed by the device of the Chapman patents, Nos. 599,892 and 613,853.

Appeal from the Circuit Court of the United States for the District of Maine.

For opinion below, see 105 Fed. 63.

Clifton V. Edwards and Edward P. Payson, for appellant.
Edward M. Rand (Seth L. Larrabee, on the brief), for appellee.

Before COLT, Circuit Judge, and ALDRICH and BROWN, District Judges.

BROWN, District Judge.   This appeal raises the question of infringement of patent No. 535,158, to Julien M. Bradford, dated March 5, 1895, for "method of, and apparatus for, regulating electric circuits." Claims 1, 2, 4, and 5 are in issue.

The appellant contends that the patent is essentially for a new method of utilizing an electric current, and that the method claims are of first importance.   They are:

"(4) The method of governing the action of a current-varying apparatus, which consists in simultaneously releasing and actuating said current-varying apparatus by differential power the instant the force of current controlled by said apparatus varies from the required degree.
"(5) The method of regulating an electric circuit, which consists in simultaneously releasing and actuating current-varying apparatus by differential power the instant the force of current controlled by said apparatus varies from the required degree. and in opposing the action of said current-varying apparatus by alternation of said power the instant the required force of said current is restored."

Bradford's problem was, broadly, to so manage the faults in a working current as to make the current control and correct itself.   Its own variations or irregularities are used to actuate mechanism which counteracts the variations.   These faults or variations automatically, and through intervening means, actuate a "current-varying" device. For our purposes, we may consider the current-varying device as a

rheostat with a lever arm. As objectionable variations of the main current occur, this arm is moved in one direction or the reverse, as the current weakens or strengthens, and by the lever movement the main current is kept substantially normal.

"Mechanism responsive to changes in the current to move the current-varying device in the right direction to counteract such changes" is acknowledged by the patentee to be in the prior art; and the specification states that the apparatus therein described "differs from other apparatus for the same purpose in the means employed to cause instantaneous connection and disconnection between the current-varying device and an auxiliary motor by which it is moved in response to incipient changes in the current to be regulated."

To understand the "method" of the patent, we must examine the action of Bradford's apparatus. A solenoid, consisting of a coil of wire surrounding a metal core, is the first device operated by and responsive to variations of the main current. As the current in the coil weakens or strengthens, more or less magnetic pull is developed, and movement is imparted to the core. The core will move in one direction or the other, as its magnetism is weaker or stronger. An objection to making a direct connection between this core and the rheostat lever is that the extent of movement of the lever would be directly proportionate to the extent of variation of the current. Such a device would be dependent upon the development of a considerable fault in the main current, and therefore would not perform with desirable promptness the function of checking the fault. The fault must be substantial before the counteracting power is applied. Bradford, therefore, employs the solenoid, not to impart corresponding and proportional movement to the lever arm of the rheostat, but to connect and disconnect a relay current.

A slight variation of the amount of current produces a slight movement of the solenoid core, but a slight movement is sufficient to make contacts by which a relay current is cut in and out, and sent in one direction or the other through intermediate apparatus. Bradford thus secures a positively acting electrical force which can operate in one direction or the other immediately upon the occurrence of a variation of the main current.

We have next to consider the manner in which Bradford uses this relay current. He does not apply it as a power adequate by itself to cause desired movements of the lever arm. As he uses the variations of the main current to establish connection with his auxiliary relay current, so, again, he uses his relay current to connect and disconnect power derived from pulleys.

Bradford's lever arm is moved by power derived from shafting operated by independent and external means. His apparatus includes two loose pulleys revolving in opposite directions upon a shaft, and means for causing the revolution of the pulleys. Between the two loose pulleys is a middle pulley directly connected by gearing with the lever arm. While the main current is normal the moving pulleys are out of contact. A weakening of the main current causes the relay to so magnetize one pulley that it is attracted to and adheres to the middle

pulley, imparting to the middle pulley motion in one direction. On the other hand, should the main current strengthen, the other pulley is so magnetized as to make connection with the middle pulley, and give it motion in another direction.

Bradford employs his relay current to operate an electric clutch. Two different paths are provided for the relay current. By one connection the relay flows through one path to the right-hand pulley; by the other connection, through another path, to the left-hand pulley. Reviewing the whole operation: A variation of the main current moves the solenoid in one direction or the other; a contact is made on one side or the other; the relay current flows to one side or the other, and develops in one pulley or the other a magnetic force. This magnetic force connects one pulley or the other, thus imparting mechanical energy to the lever arm in either direction as is desired.

We will next consider the views presented by the counsel for complainant as to the nature and substance of Bradford's "method." This, in the brief, is said to be:

"Bradford's method of balancing two opposing electrical forces, and operating the current-varying device by a difference between these forces caused by variations in the main current." Also:

"The essential feature of the invention was the method of using a differential power in such manner that the current-varying device was instantaneously connected and disconnected with the solenoid core, under control of the relay current."

It is said, further, that what Bradford brought into the art was— First, the method of controlling a dynamo current by opposing unequal electric forces, and using their resultant force to move the current-varying device; and, second, the combination of instrumentalities, including unequal opposing coils to effectuate this method.

The charge of infringement is based principally upon the allegation that the defendant uses, in an automatic current regulator, Bradford's differential power. The meaning of this term "differential power" must be investigated. The complainant defines it as differential electric power,—the difference in effective power of two unequal electric forces operating as needed. From this, and from the complainant's presentation of the case, we do not understand that it is now contended that Bradford's patent is broadly for the use of a relay current applied alternately in one direction and the reverse to govern current variations.

The specification applies this term first to the mechanical power which stands ready for instant application in the two oppositely revolving pulleys. This is called the "driving power," and the specification says:

"It may be called 'differential power,' since it is expended in one direction or the reverse with different effect."

The specification also refers to "controlling power," produced by an electric current which alternates, or acts by turns, and says:

"This also may be called a 'differential power,' since it is expended in one direction and the reverse with different effect."

If we construe the term "differential power," used in the fourth and fifth claims, to include merely the mechanical power, or driving power, there is obviously no infringement.

The first and striking difference between the device of the patent and that of the defendant is that the defendant does not use an auxiliary mechanical force, but moves the lever arm by magnetic pulls. If, therefore, the method of Bradford includes, as an essential feature, the use of a mechanical relay as well as an electrical relay, the defendant omits an essential element of Bradford's combination, as well as of his method.

It is contended, however, that in the defendant's device, as in the complainant's, there stand ready forces which may be instantaneously applied to the lever arm,—in Bradford's machine, the mechanical force generated from shafting; in Chapman's, magnetic force created by an electric current. It is said that the substance of the invention resides in the use of differential electric power to govern the application of force to the lever arm, and not in the kind of force applied to the lever arm; and that, in this view, a magnetic force generated by an electro-magnet must be regarded as a mere equivalent for the mechanical force from moving pulleys.

If it be true that power developed from an electro-magnet may be regarded as the equivalent of power developed from moving pulleys,—if it is immaterial whether the force whose application is to be governed is mechanical or electrical,—we are at once confronted with the consideration that a complainant can hardly be entitled, in the electrical field, to monopolize combinations of forces which could not be monopolized in the mechanical field.

In this view, the breadth of a claim that the defendant is an infringer because it balances two electrical forces against each other, and operates by the difference, is apparent. What would be said of the claims of a patentee of a machine driven by steam power, who should claim the balancing of mechanical forces, generated by steam, against each other, and operating by the difference; or of a mechanic who should claim to monopolize balancing the force of one spring against the force of another spring, and operating by the difference between the two opposing forces? A patent for the use of a resultant force in a particular art is no more possible in electrical apparatus than in ordinary mechanical appliances. The defendant has the right to oppose forces generated either by electricity, or by steam, and to operate by their difference, provided this is not done in a specific manner covered by the patent, or in a manner substantially similar. Broad generalizations of this character cannot be accepted as a proper test of infringement. If the claims are of such breadth, they are invalid.

We will consider, however, whether the defendant makes use of the substance of what is disclosed in Bradford's apparatus, and we will first compare the devices of Bradford and Chapman when out of action.

In Chapman's apparatus, as in Bradford's, while the governor is not in action, the current is divided into two branches. Bradford's current at that time generates magnetism which acts to separate his

three pulleys. The current passes through a coil upon the middle pulley, giving to one side positive magnetism, to the other negative. The current also passes through coils on each of the side pulleys, creating the same magnetic polarity in these pulleys as exists in that side of the middle pulley, which they respectively face. Similar magnetism causes repulsion, and the pulleys stand apart; and, though the side pulleys are in motion, no action of the lever arm follows. The purpose of generating these four magnetic forces is to hold apart the members of a magnetic clutch. Chapman does not use the current for this purpose, or for any analogous purpose. His regulator consists of a differentially wound solenoid, the core of which is directly connected with the arm of the rheostat. The movements of the core move the lever arm. The current is divided, and is led to oppositely wound coils surrounding each end of the solenoid core. These coils are equal, and, being equally energized, but in opposite directions, pull on each end of the core with equal force. They stand ready, while the regulator is not in action, as Bradford's pulleys stand ready, to move the lever arm in either direction. Bradford uses his normal division of the current to separate the parts of his clutch. Chapman uses the two branches of his current to provide two stores of energy adequate to move his lever arm in either direction. In this respect his apparatus and use of the current are substantially dissimilar from Bradford's.

It is said, also, that Chapman's divided current holds his solenoid core in a state of stable equilibrium, and it is said that this is substantially what is done by Bradford's divided current when it holds apart the members of the magnetic clutch.

With Chapman, the important reason for dividing the current is to provide two reservoirs of energy adequate for the operation of the lever arm. If, in addition, his coils perform the function of holding the solenoid core still while the machine is not called upon to act, this does not seem to us to embody the substance of Bradford's invention, or to be substantially similar to holding the three pulleys apart.

We think, therefore, that a divided current is used by Chapman in his apparatus for a purpose substantially different from the purpose for which Bradford uses it. The differences in apparatus are substantial.

The question of infringement, we think, must be tested, then, by a comparison of what occurs in the operation of the respective machines while engaged in regulating the current, and of the coils which are energized during action; and this brings us to the question whether Chapman uses "differential power," as defined by the complainant's counsel, substantially as Bradford uses it.

When the relay current is admitted into Bradford's right-hand pulley, its first work is to destroy the positive magnetism of that pulley, and its next work to give it negative magnetism. It is necessary first to neutralize the magnetic effect of the current in coil A, on the right-hand side of the right-hand pulley. Each of the side pulleys has, in addition to the coil A, which acts to keep the pulley out of contact, another, oppositely wound, coil, B. There is no current in

either of the coils B when the governor is not in action. Coils B receive current alternately, as a variation of the main current makes connection with the relay on one side or the other. Only one coil B is energized at one time. As the relay connection is made, the relay current flows into coil B on the left-hand side of the right-hand pulley; the branch of the normal current which formerly was in coil A is divided between coil A and coil B, coil A receiving one half of what it received before, coil B receiving the other half. Coil B, however, has an additional turn or turns. Therefore, not only is coil A neutralized, but additional and opposite magnetism results from the additional turns on the differentially wound coil B.

The active factor, then, or differential power, of the complainant, is the energy resulting from the additional turns on coil B after coil B has neutralized coil A. Bradford's apparatus, therefore, brings upon one pulley by the relay current power which cannot work until it has overcome a resistance. Chapman has no such resistance to overcome. By his arrangement he has dispensed, not only with the mechanical relay, but with electro-magnets to produce repulsion, and with the use of the relay current to overcome such magnetic repulsion.

Throwing out of consideration such use by Bradford of his relay current as has no corresponding use by Chapman, we may, for purposes of comparison, describe the action of Bradford as magnetizing first the pulley on one side to connect it with the middle pulley, and next magnetizing the pulley on the other side for a similar purpose.

The "differential" power of Bradford which arises after neutralizing opposition of coil A is expended on one side only, and in one direction only. Bradford's differential power arises after variation of the main current by energizing additional turns of coil B, and after neutralizing coil A. The moving residue is the "differential power" of complainant's counsel.

It is apparent, then, that Bradford operates his whole apparatus by alternating "differential power." The differential power which operates at one time has no direct effect upon, or relation to, the differential power which operates at another time.

In the complainant's brief it is said that:

"Inasmuch as coils A, A, each have an equal number of turns, they each exert an equal force, and therefore the force exerted on core 16 by one magnetic core or wheel 15 is counterbalanced by that of the other wheel 15, and consequently no action of core 16 results, and the latter is held in stable equilibrium."

We think this method of showing a similar balancing of electric forces is unsound. Pulley 16 is in equilibrium because not in contact with any mechanism which can move it.

Bradford's machine does not come into action because wheel 15 on one side is so magnetized as to overcome any power or force exerted by wheel 15 on the opposite side. Therefore Bradford's whole combination of three magnets does not exhibit an electrical operation corresponding to that in the working solenoid of Chapman.

Our comparison, to find a similar electrical operation producing

movement, must be between the electrical operation which occurs upon one wheel 15 of Bradford's device and the electrical operation which occurs in Chapman's device as a whole. It may be possible that Chapman, by using a new electrical operation or a new electrical device, which was employed in duplicate by Bradford, would infringe, though Chapman used it, not in duplicate, but singly, for the same purpose.

To repeat, the electrical operation which moves the lever arm of Bradford's device in one direction is as follows: Magnetic repulsion is first overcome by introducing the relay current until it neutralizes the previous magnetism, and then by adding current in the additional turns, which produces magnetism in the opposite direction. The movement given to wheel 15 is a very slight movement in one direction only. When the relay has finished its work on that side, the current ceases to flow through coil B, which ceases to operate; and coil A resumes its work to keep the apparatus quiet on that side.

In Chapman's device there are two coils additional to those which produce power for the movement of the lever arm. They act alternately at each end, and not· simultaneously. As the relay is admitted to one, it neutralizes the permanent magnetism at the same end. The relay current energizes a coil at one end. This neutralizes the other coil at that end, leaving the permanent electrical power, which has no counterpart in Bradford's device, free to act. The active factor of Chapman is the permanent magnetism at one end of the coil. No new active power is introduced by the relay. When it has acted, and the current is restored, the additional coil is no longer energized. Wheel 15 of Bradford's device operates positively in one direction, not alone by neutralizing the previous power, but by adding new power. Chapman operates solely by neutralizing one force in order to free the other. Each neutralizes power by the relay, but neutralizing power alone is inadequate to move Bradfords device, and adequate to move Chapman's.

In the additional brief for the appellee it is said:

"Bradford's magnets are unequally as well as differentially wound. If Bradford's coils had an equal number of turns, he would have none of his new differential power, and consequently his method would not work."

We think this points out a substantial difference, and the unsoundness of the present contention as to differential electric power.

It is also pointed out that in the file wrapper appears the statement that Bradford's available magnetic energy was that which arose in coil B after neutralizing coil A; and that Chapman uses no "differential power," using the term in the sense in which it was used in communications to the patent office.

We have next to consider the method claims. Bradford's method claims call for releasing and actuating by differential power. Complainant's expert Wolcott says:

"The discovery or invention of Bradford consists in the actuating of the current-varying apparatus * * * by differential power which acts instantaneously and which simultaneously releases and actuates said current-varying apparatus."

We are unable to see that differential power, as defined by the complainant, releases the current-varying apparatus of either complainant or defendant. If differential power does not arise until after the coils have been neutralized, the differential power merely actuates, and does not release. The new definition of differential power does not accord with the claims, which require that it should perform a function which, by the complainant's own definition, it cannot perform. Chapman does not release his apparatus by the difference between unequally wound coils. He releases his apparatus by the action of the relay, which occurs before differential power is developed. The operation which moves his core does not correspond at all with that which moves Bradford's wheel 15 into contact with the middle pulley.

Considering also claim 5, this employs the language, "opposing the action of said current-varying apparatus by alternation of said power." We fail to see how this language is applicable, if we are to use the term "differential power" as defined by complainant's counsel. We are of the opinion that the theory upon which the case was argued to this court is a departure from the patent, and from the true interpretation of the claims.

We are also of the opinion that infringement cannot be based upon the fact that Chapman uses a solenoid with differential winding. Bradford testifies that Chapman suggested to him the use of winding consisting of two equal coils running in opposite directions; that when but one of the coils received current magnetic force would result, but that when both of the coils received current at the same time they simply neutralized each other, and no action resulted. He testifies that, after considering the plan of causing action by a single electro-magnetic force,—that is, a force not differentiated by another electric current,—he abandoned that idea.

We think, upon this evidence, that Chapman was entitled to use differential winding for his working solenoid, and to use one magnetic force to neutralize the other. This involved a division of the current and the use of the relay. Chapman added to what he had suggested to Bradford a second coil at each end, whose function it was to neutralize the action of the first coil at that end. Bradford was compelled to neutralize an electric force for an entirely different reason. He was obliged to put in magnetic repulsion for a purpose entirely foreign to anything in Chapman's device. It was necessary, before his relay could operate as an active factor, that he should neutralize this force. He cannot monopolize the idea of neutralizing one force in order that another force may act. Upon his own admission, Chapman suggested to him the neutralizing of one force by another, and the idea is applied in a substantially different way in each machine. It is also in evidence that differential winding for the purpose of preventing sparking was old, and Chapman was entitled to use it for this purpose. It appears, moreover, that differential magnets and a relay current were old in the art.

There is no suggestion in Bradford's specification that his method was applicable without auxiliary mechanical power. He used differential winding to neutralize magnetic repulsion and to secure magnetic

attraction. While his ultimate object was to govern the action of the current, his immediate object was to govern the application of mechanical power by an ingenious electric clutch.

We do not think that Bradford's patent can fairly be construed to cover broadly all methods of governing an electrical current through the use of electrical magnetism which operates after the current has overcome other magnetism; but that his patent must be limited substantially to the combination therein described, which includes, as essential elements, an auxiliary mechanical power and an electric clutch to apply the power.

We think there are the following substantial differences: The defendant divides its normal current for the purpose of storing up energy in both ends of the working solenoid core, intending to use this energy to move the rheostat arm. The complainant divides his main current to create energy to hold the parts of an electric clutch out of contact. The complainant introduces his relay current to release the mechanical parts, and also for the purpose of producing positive action by his unequally wound coils. The defendant uses the relay current for the purpose of neutralizing one of the two forces which move the rheostat arm, thereby permitting the other force to act. The complainant's method does not involve the neutralizing of one of the forces, either mechanical or electrical, which is to move the lever arm. The action of the defendant's apparatus does not arise from energizing additional turns, but from neutralizing one coil of a differentially wound magnet.

The general considerations which require a limited construction of the patent are sufficiently dealt with in the opinion of the circuit court. We have, therefore, in this opinion, dwelt more particularly upon the method claims and the complainant's limited definition of "differential power."

Upon the whole case, we adopt the view of the defendant's experts that the complainant and defendant were proceeding upon opposite and diverging lines of experiment, and that each has produced an essentially different combination.

As a result, we regard the defendant's device as an independent invention, which does not embody the substance of what the complainant is entitled to monopolize, and therefore there is no infringement.

The judgment of the circuit court is affirmed, and the costs of appeal are awarded to the appellee.