KESTNER EVAPORATOR CO. v. AMERICAN EVAPORATOR CO.

(Circuit Court, E. D. Pennsylvania. December 1, 1910.)

No. 421.

1. PATENTS (§ 172*)—CONSTRUCTION—EFFECT OF NONUSER.
    While the validity of a patent is not affected by its nonuser, such fact may have a bearing on its construction in requiring its limitation to the device plainly shown and distinctly described.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 247; Dec. Dig. § 172.*]

2. PATENTS (§ 328*)—INFRINGEMENT—EVAPORATOR.
    The Hewitt patent No. 548,986, for an evaporator, claim 1, in view of the prior art and the proceedings in the patent office, is limited to a device having one or more return tubes which accelerate the circulation of the liquid. As so construed, *held* not infringed.

In Equity. Suit by the Kestner Evaporator Company against the American Evaporator Company. Decree for defendant.

Howson & Howson, for complainant.
Charles N. Butler, for respondent.

HOLLAND, District Judge. This is a suit for an injunction and account for an alleged infringement of patent No. 548,986, granted October 29, 1895, to Peter Cooper Hewitt, for a new and improved evaporator, which patent was assigned by the patentee to the complainant company.

The answer denies infringement, and avers that the patent does not describe any subject-matter that is legally patentable under the statutes, and that the alleged improvements were old and well known prior to the date of the alleged invention. There are other defenses set forth in the answer, and a demurrer to the sufficiency of the bill.

It will only be necessary to consider the defense of noninfringement, because if the patent can be sustained at all, it must be restricted to the improvements set forth in the claim alleged to be infringed, and if so construed, the respondent's device does not infringe.

The evaporator is a kind used to concentrate liquids by boiling them in heating tubes so as to more or less completely drive off the fluid portions in the form of vapor, and the stated object of the patentee is to effect that evaporation rapidly and to insure the rapid separation of the vapor formed from the liquid. The liquid to be evaporated is introduced into the apparatus at its base, through a pipe, and passes into the heating tubes. The tubes are heated by steam so that the liquid entering them is boiled and gives off bubbles of vapor, and the mixture of hot liquid and vapor rises in the tubes, and issues from their upper end with sufficient force to be projected through the series of stationary nozzles into a separating chamber with which the nozzle communicates, and to strike the wall of the chamber at such an angle as to impart a rotary motion to the liquid discharged, and to maintain this rotary motion in the liquid in the separating chamber. The separated vapor rises through the center

of a chamber and escapes through a pipe, while the liquid from which the vapor has been separated escapes, part (that which is sufficiently concentrated) through one pipe, and part (that requiring further concentration) through another tube or tubes, which carry this last-named part of the liquid back to the base of the apparatus, to be again heated and vaporized. That part of the liquid requiring further concentration is returned to the lower part of the device through the return tubes, which are of a much lower temperature than the heated tubes containing the ascending liquid, and it is claimed that this descending liquid of lower temperature—

"possesses a downward velocity due to the ascending velocity of the column in the heated pipes, and its transformation into centrifugal force in the chamber and this downward velocity increases the effect of the weight of the liquid in the descending pipe and adds to the rapidity of the circulation."

This alleged downward pressure of the cool liquid in the descending pipes is made a feature of this patent, and in order that this advantage in increased circulation may be accomplished, as urged in the specifications, the patentee is restricted to a device which includes this feature. That this is the proper construction to be placed upon the claim in the patent alleged to be infringed by the defendant is further strengthened by the action of the officials in the Patent Office and the acquiescence of the patentee in the allowance of claim 1, which is the claim said to be infringed. It is as follows:

"In an evaporator provided with heating tubes and one or more return tubes, a separating chamber provided with a series of stationary tangential nozzles communicating with the heating tubes, substantially as specified."

A number of claims had been submitted and rejected until they were satisfactory to the examiner, who finally, after rejecting a claim submitted as follows, "In an evaporator, a separating chamber provided with a series of stationary tangential nozzles, substantially as specified," accepted and approved claim 1 of the patent above set forth.

In the claim finally allowed, the patentee qualified the rejected claim by inserting the phrase, "provided with heating tubes and one or more return tubes," and after the word "nozzles" there is inserted in the claim allowed the words, "communicating with the heating tubes."

The patentee, in a letter to the Patent Office urging the approval of this claim, stated:

"In my evaporator, by converting the rectilinear motion of the liquid and vapor into rotary or centrifugal motion, I maintain this acquired energy in the rotary liquid, which exerts a pressure due to its centrifugal force. This centrifugal force is made to exert a pressure on the ascending column through the descending column, from which it is obvious, that as the increment of force acquired by each movement is added to the preceding acquired energy, the rate of circulation will be increased until the energy or force developed in each moment is equaled by the force required to overcome the friction of the moving liquid."

It will be noted that the combination of the stationary tangential nozzles through which the liquid is projected, producing the rotary motion and resulting centrifugal force in combination with the re-

turn tubes, which accelerate the circulation of the liquid, is the invention set forth in this claim.

The claim submitted by the patentee for a device only for a "series of stationary tangential nozzles" might have entitled him to claim a construction sufficiently broad to cover any other device which produced a rotary motion of the heated liquid for the purposes of evaporation by means of centrifugal force, but it would appear from the defense now set up, and from the action of the department, that this would have been so broad as to be void for want of novelty. Claim 1, alleged to be infringed, was only allowed after it had been narrowed to a device with a series of stationary tangential nozzles in connection with "one or more return tubes * * * substantially as specified."

"The patentee having once presented his claim in that form and the Patent Office, having rejected it and he having acquiesced in such rejection, he is, under the repeated descisions of the court, now estopped to claim the benefit of his rejected claim, or such a construction of his present claim as would be equivalent thereto." Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., 152 U. S. 425, 14 Sup. Ct. 627, 38 L. Ed. 500; New York Asbestos Mfg. Co. v. Ambler Asbestos A. C. C. Co., 112 Fed. 1022, 50 C. C. A. 669.

It appears from the evidence that this is a mere paper patent, and it is urged that we are therefore warranted in drawing the inference that it was issued by the department and accepted by the patentee, limited strictly to the construction as set forth in the claim alleged to be infringed, to wit, "the series of stationary tangential nozzles" and "the one or more return tubes." "While it is true that validity of a patent is not affected by its nonuser, it may be said to have a bearing on its construction." Westinghouse Electric & Mfg. Co. v. Toledo, P. C. & L. Co., 97 C. C. A. 69, 172 Fed. 371; Bradford v. Belknap Motor Co., 115 Fed. 711, 53 C. C. A. 293.

"The use we make of the fact that the device has never gone into actual use is in the construction or interpretation of the patent. We are justified, in view of the facts of this case, in exercising much caution in attributing to the patent anything more than is plainly shown and distinctly described. * * * This inference from the nonuse under the circumstances is the converse of the inference drawn in respect of a doubtful patent when a showing is made that it has gone into large use and displaced other devices." National M. C. Co. v. Buckeye Iron Co., 171 Fed. 847, 96 C. C. A. 515.

In the respondent's evaporator a film of liquid travels along the inner surface of the heating tubes under the influence of a vacuum to an upper chamber, where the vapor is given a circular motion and the particles of liquid separated from the vapor by centrifugal force, after which the vapor passes off. The liquid is not returned but passes through tubes to what is called another "effect." It is known in the art as that class of evaporators in which the liquid is caused to circulate only once over the heating surface; the same being delivered as a finished product by the one passage through the apparatus. The apparatus may comprise one, two, three, four or more effects, forming a system, known in the art, as multiple effect evaporation. The liquid passes once through each effect only and is discharged to a succeeding effect, due to the laws of gravity or inverted

siphons, and there is no recirculation through the evaporating tubes of the same effect through which the liquid has already passed.

It is clear that upon a proper construction of claim 1 of complainant's evaporator, the defendant's device is not an infringement, and the bill is therefore dismissed, with costs.